Richard A. Kirby (*Pro Hac Vice*)
K&L GATES LLP
1601 K Street
Washington, DC  20006-1600
Telephone:   (202) 778-9000
Facsimile:  (202) 778-9100

Laura K. Clinton (*Pro Hac Vice Forthcoming*)
Martha Rodriguez Lopez (*Pro Hac Vice*)
K&L GATES LLP
925 Fourth Avenue, Suite 2900
Seattle, WA  98104-1158
Telephone:  (206) 623-7580
Facsimile:  (206) 623-7022

*Attorneys for Defendants Eastside Investment
Limited,* Investec Trust (Switzerland) S.A.
(f/k/a Radcliffes Trustee Company S.A.), as
Trustee of the Tower Trust*, Turret Corporation
(f/k/a Woodstock Corporation (f/k/a Lehigh Corporation))*

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>                              Plaintiff,<br><br>v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>                              Defendant. | Adv. Pro. No. 08-01789 (BRL)<br><br>SIPA Liquidation<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>                              Debtor.<br><br>IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC,<br><br>                              Plaintiff,<br><br>v. | Adv. Pro. No. 10-05267 (BRL) |

LEON FLAX, TURRET CORPORATION
(f/k/a WOODSTOCK CORPORATION (f/k/a
LEHIGH CORPORATION)), EASTSIDE
INVESTMENT LIMITED, THE TOWER
TRUST, INVESTEC TRUST
(SWITZERLAND) S.A., as Trustee of The
Tower Trust, RADCLIFFES TRUSTEE
COMPANY S.A., as Trustee of the Tower
Trust, R&H TRUST CO. (JERSEY)
LIMITED, as Trustee of the Tower Trust, and
WELLINGTON TRUSTEES (BVI)
LIMITED, as Trustee of the Tower Trust,

                          Defendants.

## JOINDER IN AND MEMORANDUM OF LAW IN SUPPORT
## OF MOTION TO WITHDRAW THE REFERENCE

Defendants Turret Corporation ("Turret"), Eastside Investments Limited ("Eastside")

and Investec Trust (Switzerland) S.A., as Trustee of The Tower Trust ("Investec")

(collectively the "ITS Defendants"), by and through their attorneys, K&L Gates LLP,

respectfully move this Court for an order pursuant to 28 U.S.C. § 157(d), Rule 5011 of the

Federal Rules of Bankruptcy Procedure, and Rule 5011-1 of the Local Rules of the

Bankruptcy Court withdrawing the reference to the bankruptcy judge of this adversary

proceeding brought by Irving H. Picard as Trustee for the liquidation of Bernard L. Madoff

Investment Securities LLC ("BLMIS").[1]  This adversary proceeding seeks recovery of an

aggregate amount of at least $5,566,098 in transfers dating from as early as 1987 against all

---

[1] The ITS Defendants do not concede the claims or allegations in the Trustee's Complaint.
They expressly reserve all defenses in this action, including defenses based on failure to state
a claim.  The ITS Defendants intend to contest personal jurisdiction under Rule 12(b)(2).
This motion is not a consent to jurisdiction.

the named defendants[2] based on intentional and constructive fraudulent transfer claims under federal and state law.  *See* Declaration of Richard A. Kirby in Support of Motion, Ex. A ("Complaint"), ¶ 3.  The complaint also asserts a claim for common law unjust enrichment against all defendants.  Complaint ¶¶ 121-125

To avoid duplication, the ITS Defendants adopt, incorporate, and rely upon the arguments and authorities set forth in the "Memorandum of Law in Support of Defendant Leon Flax's Motion to Withdraw the Reference to the Bankruptcy Court" ("Memorandum") and supporting Declaration filed concurrently in this action.

Specifically, the ITS Defendants seek withdrawal of the reference to consider:

- Whether this Court's decision in *Picard v Katz* interpreting the avoidance limitations of Section 546(e) should be applied to the claims against the ITS Defendants;

- Whether the Trustee can avoid transfers that constitute payments on account of antecedent debts under federal and state law;

- Whether the Trustee has any authority to avoid transfers that occurred outside of the United States and/or between and among foreign entities, and, if so, the limitations of such authority;

---

[2] The ITS Defendants note that the Trustee has also named The Tower Trust as a defendant herein.  He has also named, in its alleged capacity as Trustee of The Tower Trust, the Radcliffes Trustee Company.  The ITS Defendants note, on information and belief, that The Tower Trust is a Jersey Law Trust with no legal personality and that Radcliffes Trustee Company SA is not a separate legal entity but was the former name of Investec Trust (Switzerland) SA up until February 2004 when the change of name was registered.  The ITS Defendants do not concede that either entity is amenable to suit here.

- Whether the bankruptcy judge has the Constitutional authority, as interpreted by the Supreme Court in *Stern v Marshall*, to finally adjudicate the claims by the Trustee.

- Whether the bankruptcy judge has the Constitutional power to finally adjudicate the private rights at issue in the defenses available to the ITS Defendants as to value and/or fair consideration, including rights that may arise from their status as subsequent transferees.

- Whether, if there is to be a jury trial in this case, the reference should be withdrawn for all purposes.

**In Addition to The Grounds Set Out Above, The Reference Must Also Be Withdrawn to Consider Whether the ITS Defendants Are Entitled to Enforce Their Rights to Consequential Damages for the BLMIS Fraud.**

In addition to the arguments on which they join, as set out above, the ITS Defendants offer the following additional grounds for withdrawing the reference in this case.

**A.    The ITS Defendants' Right to Damages Under the Federal Securities Laws Were Antecedent Debts Not Subject to Clawback.**

Withdrawal of the reference is also necessary to consider whether the ITS Defendants' damages as fraud victims under the federal securities laws are included in the "antecedent debts" that were paid by the BLMIS transfers.

The Trustee admits in his complaint that BLMIS fraudulently induced the ITS Defendants' investments, thereby implicitly conceding that they were entitled to return of their principal as a remedy for this fraud. ITS Complaint ¶¶ 30-37. What remains in dispute is whether the ITS Defendants are also entitled to the same rights to consequential and other damages as are generally available to victims of fraud under federal law. To the extent that substantive federal law allows such claims, they should be considered as part of antecedent

debts that BLMIS paid with the transfers.[3]  To a large extent, this issue turns on whether the extinguishment of the ITS Defendants' damages claims against BLMIS should be credited as "value," over and above the amount of their principal investment.

The definition of "value" under the Code is not so circumscribed.  To the contrary, "value" is defined as including "satisfaction. . . of a present or antecedent debt."  11 U.S.C. § 548(d)(2)(A).  A liability on a legal claim is a "debt" owed by BLMIS to the ITS Defendants.  *See* Bankruptcy Code § 101(12) ("The term 'debt' means liability on a claim").  Because at the time of the transfers, the ITS Defendants had claims against BLMIS (and BLMIS was liable to them) for damages, amounts above the ITS Defendants' principal investment should be considered as payment of such damages and are not avoidable by the Trustee.

The Bankruptcy Code defines "claim" as a

> (A) right to payment, <u>whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured</u>

11 U.S.C. § 101(5) (emphasis added).  By enacting this definition, Congress gave the "broadest possible definition" to the term "claim" in order to ensure that "all legal obligations of the debtor, no matter how remote or contingent [would] be dealt with in the bankruptcy case." S. REP. NO. 989, 95th Cong., 2d Sess. 22, reprinted in 1978 U.S.C.C.A.N. 5787, 5808; *see also* H.R.REP. NO. 595, 95th Cong., 2d Sess. 309, reprinted in 1978 U.S.C.C.A.N. 5963, 6266 (same); *see also Ohio v. Kovacs*, 469 U.S. 274, 279 (1985) (stating that Congress

---

[3] The fact that some BLMIS customers had such damages claims extinguished through pre-liquidation payments while others did not does not make such payments fraudulent transfers. *E.g. In re Sharp Int'l Corp.*, 403 F.3d 43, 54 (2d Cir. 2005) (finding that, under analogous state law, a conveyance that satisfies an antecedent debt is not fraudulent, "even if its effect is to prefer one creditor over another").

intended that the term "claim" would be used in its broadest sense).  Notably, Congress did

not require that legal liability be established or reduced to judgment through litigation.  11

U.S.C. § 101(5) (including a right to payment in a claim even when the claim is, amongst

other things, contingent or disputed); *Energy Coop., Inc. v. SOCAP Int'l, Ltd (In re Energy

Coop.)*, 832 F.2d 997, 1002 (9th Cir. 1987) ("[W]hen a claim exists, so does a debt.").

That some of the Trustee's avoidance claims against the ITS Defendants are also

framed under New York law is irrelevant.  The courts in this district have uniformly held that

the terms "value" under the Bankruptcy Code, and "fair consideration" required under the

New York Debtor & Creditor Law, are used "interchangeably."  *See, e.g., Geron v. Palladin

Overseas Fund Ltd. (In re Applied Theory Corp.),* 323 B.R. 838, 840 (Bankr. S.D.N.Y. 2005);

*Churchill I,* 256 B.R. at 677 ("The three terms – 'reasonably equivalent value' in Section

548(a)(1)(b), 'fair consideration' in the D & CL and 'value' in Section 548(c) -- have the

same fundamental meaning").

The ITS Defendants are entitled to credit for the full value of any damages claims they

may have against BLMIS and such amounts are not subject to clawback.  In the context of a

Rule 10b-5 claim based on the admitted fraud perpetrated by BLMIS, the remedy, and

therefore the value of the claim, includes the return of principal and consequential damages or

interest.  *See e.g. Rolf v. Blyth, Eastman Dillon & Co., Inc.*, 637 F.2d 77, 86-87 (2d Cir. 1980)

("In view of the high inflation rates that beset this period, [when the defendant exercised

control over the defrauded plaintiff's investment] a damage without prejudgment interest (or,

indeed, even one that does include it) would not give [Plaintiff] full compensation for the

losses he suffered at the hands of his fiduciary."); *Zeller v. Bogue Electronic Mfg. Corp.*, 476

F.2d 795, 803 (2d Cir. 1973) (recognizing that consequential damages are available for

federal securities law claims when they are established with certainty); *cf. Stevens v. Abbot, Proctor, & Paine*, 288 F. Supp. 836, 850-851 (E.D. Va. 1968) (capital gains taxes incurred by fraudulent conduct were recoverable as actual damages); *See Lustig v. Weisz & Assocs. Inc. (In re Unified Commercial Capital)*, No. 01-MBK-6004L, 01-MBK-6005L, 2002 WL 32500567, * 6 (W.D.N.Y. June 21, 2002) ("It is simply incorrect to say that the perpetrator of a Ponzi scheme does not receive 'value' when an innocent victim 'invests' money with him. The simple fact is that the use of funds for a period of time has value.  Money is valuable even when used for illegal purposes.") (internal cites omitted); *see also Daly v. Parete (In re Carrozzella & Richardson)*, 270 B.R. 92, 97 (Bankr. D. Conn. 2001) (transaction's illegality does not deprive exchange of value).

A creditor must be "afforded in federal bankruptcy court the same protection he would have under state law if no bankruptcy had ensued." *Butner v. United States*, 440 U.S. 48, 56 (1979).  The Court expressly rejected the position advocated by the Trustee here, that a bankruptcy proceeding permits "undefined considerations of equity" to preempt state law. *Id.* at 56; *see also BFP v. Resolution Trust Corp.*, 511 U.S. 531, 544-45 (1994) (finding that absent clear and manifest statutory guidance, "the Bankruptcy Code will be construed to adopt, rather than to displace, pre-existing state law"); *Bear, Stearns Secs. Corp. v. Gredd*, 275 B.R. 190, 195-98 (Bankr. S.D.N.Y. 2002) (dismissing intentional fraudulent conveyance claims where the debtor did not have an interest in the transferred property under federal securities law, holding that "[b]ankruptcy does not provide a forum for the realignment of rights or priorities but serves only as a forum for the recognition of rights already acquired.") (cites omitted).

The Trustee's claims to recovery of all amounts in excess of principal are in derogation of federal rights granted to victims of securities fraud. The Trustee's attempt to unilaterally limit customers' claims to their principal investment, contrary to the deference recognized by *Butner* to be accorded substantive non-bankruptcy law, presents a serious conflict. Resolution of this conflict requires the "substantial and material consideration" of laws regulating interstate commerce and the Bankruptcy Code and requires withdrawal of the reference so that this Court can address these issues in the first instance.

### B. The Reference Also Should be Withdrawn to Consider Whether a Bankruptcy Judge Can Adjudicate The ITS Defendants' Private Rights Under New York and Federal Law to Remedies for Fraud and Breach of Fiduciary Duty.

The Trustee's position on the computation of "value" and "antecedent debt" under the Code raises a separate and distinct *Stern v. Marshall* issue that independently requires withdrawal of the reference. As previously discussed, the concept of "value" is not governed by the Bankruptcy Code; instead, it depends on the federal and state law fraud claims that the ITS Defendants would have been entitled to assert against BLMIS at the time of each transfer alleged in the Complaint. Because the ITS Defendants' rights to damages, and therefore their "for value" defenses against the Trustee's fraudulent transfer claims, existed prior to this liquidation proceeding and are not dependent on the bankruptcy claims process, they fall neatly into the category of "private rights" that must be adjudicated by an Article III court. *Stern*, 131 S. Ct. at 2620 (describing a private right as one that does not "stem from the bankruptcy itself" or requires the adjudication of a creditor's proof of claim).

Here, in addition to their federal claims and remedies, the ITS Defendants had common law breach of fiduciary duty, rescission, and gross negligence claims against BLMIS at the time of various transfers. The Trustee has repeatedly admitted the factual foundation

for these claims in his interim reports filed in the Bankruptcy Court, and in his allegations in the complaints filed in each of these adversary proceedings.

The remedies for breach of fiduciary duty under New York law require the return of not only the principal investment but also the award of a measure of damages designed to make the victim whole.  Courts award prejudgment interest on equitable claims such as rescission because the plaintiff should be "compensated for being deprived of the use of its money."  *USPS v. Phelps Dodge Refining Corp.*, 950 F. Supp. 504, 518 (E.D.N.Y. 1996) (awarding prejudgment interest for a rescission claim); *Wolf v. Rand*, 685 N.Y.S.2d 708, 711 (N.Y. App. Div. 1999) (granting pre-judgment interest for breach of fiduciary duty).  The New York Court of Appeals recently confirmed that compensation for loss of the time value of money is **mandated** by New York law.  *NML Capital v. Republic of Argentina*, 952 N.E.2d 482, 494 (N.Y. 2011).  Absent this component of damages, plaintiffs would be reimbursed only for their loss of use of the principal – and not for loss of use of the periodic interest payments, a separate injury."  *Id.*

In an analogous scenario involving remedies for breach of fiduciary duties under ERISA, the Second Circuit applied the Restatement (Second) of Trusts to establish that "[o]ne appropriate remedy in cases of breach of fiduciary duty is the restoration of the trust beneficiaries to the position they would have occupied but for the breach of trust."  *Donovan v. Bierwirth*, 754 F.2d 1049, 1056 (2d Cir. 1985).  Similarly, New York state courts applying the Restatement frequently provide interest payments in breach of fiduciary duty cases.  *E.g.*, *In re Estate of Newhoff*, 435 N.Y.S.2d 632, 637 (N.Y. Surrogate's Ct. 1980) (measure of damages where initial investments of trust monies are found imprudent is "the amount of funds invested *plus the legal rate of interest* from the date of investments with appropriate

credits for the moneys received on account of such investments.") (emphasis added).  The legal rate of interest in New York is nine percent.  N.Y. C.L.S. C.P.L.R. § 5004.

The Trustee's attempts to limit "value" to the ITS Defendants' principal investments assumes that the ITS Defendants have no "claims" under applicable non-Bankruptcy law other than for return of principal.  This position is flatly contrary to federal and state substantive law on the question of appropriate remedies for fraud.  Consistent with *Stern*, the reference should be withdrawn to consider whether a bankruptcy judge can adjudicate the ITS Defendants' private rights under New York law remedies for fraud and breach of fiduciary duty.  *E.g. Stern*, 131 S.Ct. at 2616 (suggesting that a bankruptcy judge cannot consider inherently private non-bankruptcy claims even if they had been raised as affirmative defenses); *Meoli v. The Huntington Nat'l Bank (In re Teleservices)*, 456 B.R 318, 337 n. 59 (Bankr. E.D. Mich. Aug. 17, 2011) (citing *Stern* for the proposition that "the claimant who is being asked to return perhaps millions on preferences should be just as deserving of an Article III judge's independence as an accused tortfeasor defending against a trustee's state law counterclaim").

## CONCLUSION

For the foregoing reasons and the reasons set forth in the Memorandum, the ITS Defendants request that this Court enter an order withdrawing the reference for all purposes, including the trial and disposition of this adversary proceeding.

Dated: April, 2, 2012  
      Washington, D.C.

          Respectfully submitted,

          K&L GATES LLP


          By____/s *Richard A. Kirby*_____  
          Richard A. Kirby (*Pro Hac Vice*)  
          K&L Gates LLP

1601 K Street
Washington D.C.  20006
Telephone:  (202) 778-9000
Facsimile:  (202) 778-9100

and

Laura K. Clinton *(Pro Hac Vice Forthcoming)*
Martha Rodriguez Lopez (*Pro Hac Vice*)
K&L GATES LLP
925 Fourth Avenue, Suite 2900
Seattle, WA  98104-1158
Telephone:  (206) 623-7580
Facsimile:  (206) 623-7022

Attorneys for Defendants Eastside Investment
Limited, Investec Trust (Switzerland) S.A. (f/k/a
Radcliffes Trustee Company S.A.), as Trustee of
the Tower Trust, Turret Corporation (f/k/a
Woodstock Corporation (f/k/a Lehigh
Corporation))